BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
PATRICK R. DELAHUNTY (CABN 257439)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5045
    FAX: (408) 535-5066
    Email: Jeff.nedrow@usdoj.gov
    Email: Patrick.delahunty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 16-CR-00211 LHK |
| Plaintiff, | ) UNITED STATES' PRE-HEARING BRIEF<br>) REGARDING MENTAL COMPETENCY |
| v. | ) Date: September 8, 2017 |
| VILASINI GANESH, | ) Time: 9:15 a.m.<br>) Court: Hon. Lucy H. Koh |
| Defendant. | ) |

GOVERNMENT'S REPLY REGARDING ATTORNEY-CLIENT PRIVILEGE ISSUES
16-CR-00211 LHK

## I. INTRODUCTION

Counsel for Dr. Vilasini Ganesh (Ganesh) has indicated that he, Mr. Dan Horowitz (Horowitz) intends to testify at his client's competency hearing. In the months leading up to the competency hearing, Horowitz has repeatedly offered to allow the government to review communications from Ganesh because they purportedly show she is incompetent and legally insane. The government repeatedly refused Horowitz's offers and repeatedly informed him that the government would not review or learn about any communications with Ganesh without a waiver by Ganesh of the privilege. Receiving no clear response from Ganesh as to whether Horowitz would get a waiver, the government moved the Court to inquire whether Ganesh had provided such a waiver. ECF No. 55 (citing Cal. R. Prof'l. Conduct 3-100). Ganesh did not respond. Instead, Horowitz appeared at the competency hearing and asserted that he intended to testify without a waiver. The competency hearing was continued, and ahead of that hearing, the Court issued a minute order directing Ganesh to respond to multiple concerns raised by the possibility of Horowitz's testimony. Ganesh filed a brief on August 23, and the government responds herein.

In sum, the government recommends a cautious approach. The relevant case law indicates many of the questions raised by the Court depend upon case-specific facts that, while primarily known here, may be difficult to determine until a hearing. Nevertheless, based upon what is known by the government now, Horowitz's testimony should be limited to factual-based impressions, rather than information revealing substantive communications. Similarly, Horowitz should only be permitted to provide information regarding confidential or privileged information if Ganesh provides a waiver of the attorney-client privilege. Regarding other possible conflicts, the primary ethical issues here are the duties of confidentiality and loyalty owed by Horowitz to Ganesh. Finally, the government agrees that Ganesh must be present at the hearing.

## II. ARGUMENT

The government addresses each of the Court's concerns in turn.

### A. Proffer of Mr. Horowitz's Testimony

Ganesh arguably made a proffer of Horowitz's testimony. *See* ECF No. 70-1 (Horowitz

1 declaration). On the one hand, Horowitz asserted that what he would testify to has already been
2 submitted to the Court via the reports of Drs. Glezer and Levinson. *Id.* at ¶ 6. He also went on to assert
3 that he could add to their observations by discussing Ganesh's purported understanding of "upcoding,"
4 but this too is something that Drs. Glezer and Levinson detailed in their reports. Nevertheless, Horowitz
5 indicated that he would discuss "hours of meetings and dozens of (maybe over a hundred) emails." *Id.*
6 at ¶ 8. Horowitz also asserted that he will relay his discussions with other attorneys, offering no
7 explanation as to why such hearsay would be admissible or why those individuals would not be called as
8 witnesses. *Id.* at ¶ 9. Finally, Horowitz also asserted that he "would describe how Dr. Ganesh's illness
9 has destroyed her career, her life and legal defense." *Id.* at ¶ 15. No explanation was offered as to the
10 relevance of the first two issues or why Horowitz' opinion regarding them should be received in lieu of
11 someone with first-hand knowledge.

**B. Are Waivers Necessary for Mr. Horowitz to Testify?**

Ganesh proposes allowing her counsel to testify about their privileged communications. But Ganesh, speaking through her attorney Horowitz, has either refused to provide a valid waiver or asserted that Ganesh is incapable of providing one (although the defense does not contest the validity of the waiver by Ganesh of her patient-psychiatrist privilege regarding Dr. Levinson). The issue is whether Horowitz can testify without obtaining a waiver. Initially, Ganesh's motion left this issue unaddressed. ECF No. 70. Upon prompting from the government, Horowitz filed a supplemental brief that purports to address the issue. ECF No. 78. His response, devoid of any legal authority, is an ambiguous proposal/conclusion. He asserts that some communications with his client are not communications (because they "represent manifestations of mental illness"), and those can be provided without a waiver. *Id.* at p. 2. As to the rest, he anticipates submitting them *ex parte*. The difference between each group is left undefined.

Horowitz's proposal is needlessly ambiguous and troublesome. While there is scant case law examining the issue of a defense attorney seeking to waive his client's privilege (as opposing to being compelled by subpoena to do so) in a competency hearing, there is sufficient guidance from the Ninth Circuit and other courts to justify a conservative approach that protects Ganesh's privilege to

GOVERNMENT'S REPLY REGARDING ATTORNEY-CLIENT PRIVILEGE ISSUES
16-CR-00211 LHK

2


communicate in confidence with her attorney.

There is no question that "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States,* 425 U.S. 391, 403 (1976). The privilege is codified at California Bar Rule 3-100, and the discussion notes to it emphasize the "paramount importance" of a member's duty to preserve the confidentiality of client information. Cal. Bar. Rule 3-100, n. 1. The Rule provides that "client-lawyer confidentiality applies to information relating to the representation, whatever its source, and encompasses matters communicated in confidence by the client, and therefore protected by the attorney-client privilege, matters protected by the work product doctrine, and matters protected under ethical standards of confidentiality, all as established in law, rule and policy." Cal.Bar. Rule 3-100, n.2. An attorney must obtain informed consent before waiving protected communications. Cal. Bar Rule 3-100(A). The Rule's discussion notes contain a thorough discussion of the narrow exception to the duty of confidentiality in circumstances where disclosure is necessary to prevent a criminal act reasonably likely to result in death or bodily harm, but there is no exception in the rules that would permit an advocate to disclose confidential or privileged client information in a competency hearing. The discussion notes do note, however, that when a member has revealed confidential information, "in all but extraordinary cases the relationship between member and client will have deteriorated so as to make the member's representation of the client impossible." Cal. Bar. Rule 3-100, n.11. In such circumstances, "the member is required to seek to withdraw from the representation, unless the member is able to obtain the client's informed consent to the member's continued representation." Cal. Bar. Rule 3-100, n.11.

Not all communications between an attorney and client are privileged. Information such as the identity of the client, the amount of the fee, the identification of payment by case file name, the general purpose of the work performed, and whether an attorney coached a client in his testimony is not privileged. *See, e.g,. United States v. Carrillo,* 16 F.3d 1046, 1050 (9th Cir.1994); *Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir.1992). Similarly, when an attorney is merely communicating information, such as an order to appear in court, the communications between the attorney and the client are not privileged. *United States v. Gray,* 876 F .2d 1411 (9th Cir.1989) (holding

GOVERNMENT'S REPLY REGARDING ATTORNEY-CLIENT PRIVILEGE ISSUES
16-CR-00211 LHK

attorney-client privilege did not preclude lawyer from testifying he advised client of the sentencing date in prosecution of client for failure to appear); *McKay v. Commissioner,* 886 F.2d 1237 (9th Cir.1989) (holding testimony of taxpayer's attorney that the gave taxpayer a copy of deficiency notice from the IRS in ample time to file a petition timely did not violate the attorney-client privilege). Clients, not attorneys, hold the attorney-client privilege. It is well established that "voluntary disclosure of the content of a privileged attorney communication constitutes a waiver of the privilege as to all other such communications on the same subject." *Id.* In *Weil,* the Ninth Circuit recognized that waiver of the privilege "may be effected by implication" and by inadvertent disclosure. *Id.*

The attorney-client privilege is a rule of evidence; it is not a constitutional right. *Clutchette v. Rushen,* 770 F.2d 1469, 1471 (9th Cir.1985). Nevertheless, the Court should be cautious about finding a waiver. In the criminal context the privilege requires Sixth Amendment protection. *Id.* ("In some situations, however, government interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights."); *e.g., Gunther v. United States,* 230 F.2d 222, 223–24 (D.C. Cir. 1956). And, a defendant may receive ineffective assistance of counsel if his attorney improperly waives the privilege. *Cf. United States v. Battle*, 264 F.Supp.2d 1088, 1175 (N.D. Ga. 2003) (the decision by a defense counsel to refrain from testifying in a competency hearing did not amount to ineffective assistance of counsel).

There is a recognized line between testimony an attorney may give without a waiver and testimony he cannot give without a waiver: factual impressions are proper and substantive communications are not. A majority of courts have held that an attorney may testify as to non-privileged facts without waiving the privilege. *E.g. Darrow v. Gunn*, 594 F.2d 767, 774-75 (9th Cir. 1979) (holding there was no error in receiving defendant's attorney's testimony in "retrospective" competency hearing); *United States v. Howell*, 282 F.Supp. 246, 250 (N.D. Ill. 1968) (finding no error in the receipt of testimony from defendant's attorney regarding his client's competence in a post-sentencing hearing when the trial attorney's testimony was limited to observable information as opposed to the substance of attorney-client communications); *see also State v. Meeks*, 263 Wis.2d 794, 813-14, 666 N.W.2d 794 (Wisc. 2003) (collecting federal and state cases and describing majority and minority

rule).  The line delineated in these cases is between factual observations (appearance, etc.) and the substance of the communication.  *Id.*   In *Darrow*, the Ninth Cicuit observed that the defendant's attorney's testimony crossed this line, going into substantive conversations.  Citing the California Evidence Code, the court recognized that "the privilege would normally extend to such matters," but held that "if there was any error in admitting these statements or evidence derived from them, it was harmless" because the record was sufficient without the testimony to support the lower court's determination of competence.

A minority of courts have been more conservative.  They have held that factual-based impressions of an attorney cannot be testified to by an attorney, although these cases involve the government—not the defendant—seeking to admit the testimony.  Nevertheless, these cases are also instructive.  For example, the D.C. Circuit Court of Appeals held that the government cannot call the attorney for the defendant and inquire about the client's communications with his attorney, finding that this would invade the attorney-client privilege and the right to counsel.  *United States v. Gunther*, 230 F.2d 222, 223-24 (D.C. Cir. 1956).  As the court explained:

> If trial counsel in a criminal case could be called by the Government and asked to give an opinion as to the accused's competency and ability to assist in the defense, he could necessarily also be asked for the factual data upon which he premised his opinion. These questions would open to inquiry by the Government the entire relationship between the accused and his counsel. Such revelations would be a violation of the attorney-client privilege and would also invade an accused's right to counsel in the trial of the criminal charge.

*Gunther*, 230 F.2d at 223-24. The Wisconsin Supreme Court reached a similar conclusion.  It addressed whether the state could call a defendant's former attorney (from prior cases) to testify about her impression of whether the defendant was competent.  *Meeks*, 263 Wis.2d. 794.  For purposes of the appeal, the defendant conceded that his former attorney had not related "any specific words said to her" by the defendant.  *Id.* at 801.  The court concluded receiving the attorney's testimony was improper, holding that such testimony could not be given without piercing the privilege.  *Id.* at 816; *but see United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964) (allowing government to call defense counsel to testify regarding impressions of defendant during § 2255 post-conviction hearing).

GOVERNMENT'S REPLY REGARDING ATTORNEY-CLIENT PRIVILEGE ISSUES
16-CR-00211 LHK

5

Finally, the Supreme Court of Arizona has addressed whether the court—as opposed to one of the parties—can require defense counsel to testify at a competency hearing. *Bishop v. Superior Court, In and For Pima* County, 150 Ariz 404, 724 P.2d 23 (Ariz. 1986).  The court surveyed cases from a number of jurisdictions, including the *Darrow, Howell,* and *Gunther* decisions and concluded that the trial court is similarly confined to questions into non-substantive questions:

> We therefore conclude that, in a competency hearing, the judge may call upon both counsel as officers of the court to provide whatever conclusions and opinions they may have, together with so much of the supporting facts as may be obtained without violating either the attorney-client privilege or the confidentiality provided to attorney's work product.  In some cases, this may mean very little information will be available, while in others a great deal may be obtained.  Whatever is available should be at the court's disposal. The judge will determine whether it is necessary to seek assistance from counsel. If the testimony is not essential, it is better to dispense with counsel's help simply because the act of testifying may damage the relationship between lawyer and client.

*Id.* at 410-11.  The Arizona Supreme Court, however, was careful to note that expansive testimony by the attorney could lead to problematic cross-examination of the attorney.  *Id.* at 410.

Against this guidance, the government's position is that Horowitz may only testify regarding his factual observations and impressions of the defendant.  Courts that allow attorney testimony in a competency hearing commonly delineate a line between testimony regarding factual impressions and substantive communications (*e.g. Darrow*), while the D.C. Circuit in *Gunther* has held that even that line does not do enough to protect the privilege.[1]  The government is unaware of any cases that indicate the government or the defendant should elicit more expansive testimony from a defendant's attorney at a competency hearing without a waiver.  It is also instructive to consider the opposite approach than the one suggested by Ganesh, refraining to testify at a competency hearing, which at least one district court has held does not necessarily amount to ineffective assistance of counsel.  *United States v. Battle*, 264 F.Supp.2d 1088, 1175 (N.D. Ga. 2003) ("Defendant's argument that his counsel should have testified to his claimed incompetency at best is impractical and at worst would be unethical.")

Finally, to the extent that the Court receives testimony from Horowitz that discloses the substance of his communications with his client, the government requests that such testimony be

---

[1] Notably, at least one state has codified this distinction.  For example, the Minnesota Rules of Criminal Procedure provide that an attorney *cannot* reveal privileged communications in moving for a competency hearing.  Minn. R. Crim. Proc. 20.01, subd. 3.

GOVERNMENT'S REPLY REGARDING ATTORNEY-CLIENT PRIVILEGE ISSUES
16-CR-00211 LHK

received *ex parte*. The government does not want to know the substance of Ganesh's communications with her attorney unless she has provided a waiver.

### C. Questions the Court Should Ask to Obtain Informed Consent and Dr. Ganesh's Ability to Give Informed Consent Regarding Waiver of the Privilege

Some authority supports the argument that Ganesh could voluntarily waive the privilege despite her competency being contested. For example, the California Supreme Court has held that the trial court did not err when it accepted the defendant's refusal to waive the attorney-client privilege in a competency hearing when the waiver might have led to the admission of favorable testimony from the defendant's counsel. *People v. Mickle*, 54 Cal.3d 140, 181-85 (Cal. 1991).

The particular facts of *Mickle* merit detail. There, the defendant received new counsel for his competency hearing, and the competency counsel called the defendant's prior trial counsel as a witness, presumably with the assumption that the trial attorney could support a finding of incompetence. The prosecutor objected on the basis that doing so would lead to a waiver of the privilege, but the trial court allowed the testimony on "preliminary questions." *Id.* at 181. The defendant's competency hearing counsel then asked the defendant's trial counsel if trial counsel thought that the defendant was competent. Trial counsel said that he could not answer that question without a waiver from the defendant. The defendant refused to provide the waiver. The California Supreme Court explained what happened next:

> The court asked defendant whether he understood [trial counsel's] answer. Defendant said, "yes." The court explained that, in order to answer questions about defendant's mental condition, [trial counsel] might be required to disclose privileged communications. Defendant twice replied that he would not waive the privilege. The court then advised defendant that his decision might prevent [trial counsel] from giving favorable testimony in defendant's behalf, but that the court did not actually know what [trial counsel] would say. The court asked defendant whether he wished to consult privately with [competency hearing counsel]. Defendant said, "yes."
>
> After the meeting, the court again asked defendant whether he understood that he had the right to prevent [trial counsel] from disclosing confidential "conversations" or "knowledge" obtained through defendant or mental health experts. Defendant indicated that he did. The court asked defendant whether he waived the privilege. Defendant said, "no."
>
> [Competency counsel] made the following statement: "I find myself ... between a rock and a hard place. [¶] [T]he only evidence which could be [ad]duced on [defendant's] behalf is [trial counsel's] testimony. Not having that testimony is in effect a deprivation of [defendant's right to a competence] hearing. *At the same time, how can anybody [with] a Bar card advise him otherwise* [?]"

*Id.* at 182 (italics in original).  The California Supreme Court held that the trial court had not erred in allowing the defendant to decide whether to waive his attorney-client privilege, even though the defendant's decision initially appeared to be prejudicial.  *Id.* at 183-84.  However, in *Mickle*, there was little to suggest that the defendant was incompetent, and the hearing had been ordered in an "overabundance of caution."  *Id.* at 184 (holding the record "strongly suggested that [defendant] was capable of deciding whether to assert" the privilege and there was no prejudice in allowing him to decide the issue).

Two other cases are informative despite different procedural postures.  For example, the Ninth Circuit has held that during a competency hearing a defendant can, in limited circumstances, waive his or her constitutional right to testify.  *United States v. Gillenwater*, 717 F.3d 1070, 1080-81 (9th Cir. 2013).  And, at least one court has held that a competency hearing could not be sealed if the defendant had already disclosed the purportedly-confidential materials to the government and the court.  *See United States v. Guerrero*, 693 F.3d 990, 1003 (9th Cir. 2012) (denying writ of mandamus to seal competency hearing because, in part, defendant provided privileged communications with attorney to government and to court).

On the other hand, the government also notes that courts have not allowed defendants to waive constitutional rights while competency was an open question.  For example, a defendant cannot waive his or her right to a competency hearing if competency is in doubt.  *Pate v. Robinson*, 383 U.S. 373, 385 (1966) (improper denial of competency hearing amounted to denial of due process right to a fair trial).  Additionally, a somewhat similar issue arises when a defendant attempts to waive his or her right to counsel while there is an open question regarding competency.  In such instances, a competency determination must be made before an inquiry is made into the defendant's waiver of the right to counsel and the ability to enter a guilty plea.  *See Godinez v. Moran*, 509 U.S. 389, 400-01; *and see United States v. Colbert*, 55 F. App'x 225, 229–30 (6th Cir. 2002) ("The *Godinez* Court stated that this competency determination was essentially a prerequisite to a finding of knowing and voluntary waiver.")  What is common among these cases, however, is that they involve the waiver of a constitutional right, not the waiver of the attorney-client privilege, which is a rule of evidence.

GOVERNMENT'S REPLY REGARDING ATTORNEY-CLIENT PRIVILEGE ISSUES
16-CR-00211 LHK

8

The government recommends a cautious approach that aligns with *Mickle*.  That is, if Horowitz proffers testimony that would divulge privileged communications with the Ganesh (and he has not obtained a waiver), the government requests that the Court require a waiver or inquire if Ganesh is prepared to offer one.  While the issue is a close call, this appears to be the better approach because the California Supreme Court's construction of the privilege, if not controlling, is at least highly persuasive. Additionally, federal courts in *Gillenwater* and *Guerrero* have held that a defendant may make decisions that affect the outcome of a competency hearing despite also contesting competency at the same time. In contrast, the concerns raised the by the *Pate* and *Godinez* line of cases do not weigh as heavily because the privilege is not a constitutional right (although the government recognizes that a failure to protect the privilege can, if not corrected, lead to ineffective assistance of counsel claims, which in turn invoke constitutional rights).  Finally, if the Court makes an inquiry with Ganesh regarding a waiver because Horowitz does not obtain one, the government will not object to that inquiry being conducted *ex parte*.[2]

### D. Can Mr. Horowitz Testify as a Witness and Be an Advocate for Ganesh?

California Bar Rule 5-210 codifies the so-called advocate-witness rule.  But Rule 5-210 does not appear to prohibit Horowitz from testifying at Ganesh's competency hearing.  The proposed testimony will not take place before a jury and will be limited to a proffer or testimony before the Court.  *See* Rule 5-210 (limiting prohibition against attorney-witness testimony during jury trials).  There is also support in federal case law for Horowitz's proposal to provide the Court with information regarding his views of the defendant's competence.  Other federal courts have also found that an attorney's representations regarding his or her client's competency may be relevant to a competency inquiry.  *See infra* at Pt. II.B, *and compare Medina v. California*, 505 U.S. 437, 450 (1992) (noting in dicta that attorney has unique insight into his client's competency without addressing issue of testimony by attorney).   As a result, and subject to the position taken in the above sections, the government does not object to Mr. Horowitz providing a proffer or testimony to the Court regarding his general observations and impressions of

---

[2] To the extent that Ganesh attempts to turn this argument on its head (arguing that denying a failure by Horowitz to disclose substantive communications would be ineffective assistance of counsel), this concern should be dismissed or can be met by receiving Horowitz's testimony *ex parte.*

GOVERNMENT'S REPLY REGARDING ATTORNEY-CLIENT PRIVILEGE ISSUES
16-CR-00211 LHK

Ganesh on the topic of her competency.

### E. Conflicts that May Arise From Mr. Horowitz's Testimony

Horowitz's proposed testimony creates several ethical issues and potential conflicts. The primary one is the duty of confidentiality, which has been addressed above. Additionally, his testimony may also run afoul of his duty of loyalty. The California Supreme Court has articulated a common-law duty of loyalty owed by attorneys to their clients. "The most fundamental quality of the attorney-client relationship is the absolute and complete fidelity owed by the attorney to his or her client." *Flatt v. Superior Court* (Daniel) 94 Cal. 4th 275, 289 (1994). The government has some concerns that Horowitz's proposed testimony might arguably be seen as violating Horowitz's duty of loyalty to his client, in that it appears that he intends to provide evidence that he has doubts about Ganesh's mental health. In certain circumstances, it is possible to envision a client objecting to his or her own lawyer expressing the view that the client is incompetent. Here, however, the government is unaware of a case that holds an attorney has violated his or her duty of loyalty by proffering limited testimony regarding their perceptions of their cleint's demeanor, behavior, actions, etc. at a competency hearing, consistent with the discussion above. *See infra* at Pt. II.B; *and compare Medina*, 505 U.S. at 450 (noting in dicta that attorney has unique insight into his client's competency).

### F. Does Ganesh Need to Be Present at the Competency Hearing?

The government understands that the question presented by the Court is whether the competency hearing may begin without Ganesh present. Citing the Ninth Circuit in *Sturgis v. Goldsmith*, Ganesh asserts that Ganesh must be present at her competency hearing. 796 F.2d 1103, 1108 (9th Cir. 1986). The government agrees that, absent a clear record that Ganesh has knowingly and voluntarily waived this right, she should be present at the hearing. Should Ganesh fail to appear again, and do so without a proffer of medical emergency or something similar, the government will request an arrest warrant and a bail review hearing in which the government will argue for pre-trial detention to ensure her appearance.

//

//

DATED:  August 28, 2017

Respectfully Submitted,

BRIAN J. STRETCH
United States Attorney

　　　/s/

JEFFREY NEDROW
PATRICK R. DELAHUNTY
Assistant United States Attorney