1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  JEFFREY D. NEDROW (CABN 161299)
   PATRICK DELAHUNTY (CABN 257439)
5  Assistant United States Attorneys

6        150 Almaden Boulevard, Suite 900
         San Jose, California 95113
7        Telephone: (408) 535-5045
         FAX: (408) 4535-5066
8        Email: jeff.nedrow@usdoj.gov

9  Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 16-00211 LHK |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S BRIEF ON ALLEGED CONSTRUCTIVE AMENDMENTS (DOCKET #264) |
| v. | |
| VILASINI GANESH and GREGORY BELCHER, | |
| Defendants. | |

## I. INTRODUCTION

The government herein files its response to the defendant's December 10, 2017 brief on the topic of constructive amendments. *See* ECF No. 264. The defense has expressed the concern that the government's closing argument may stray into arguments that would constitute constructive amendments and/or variances. In addition to being premature and speculative, the brief reflects a complete misunderstanding of the law pertaining to constructive amendments. Moreover, the defense's request for "strict limitations" on the government's proof is legally baseless and should be rejected

1

outright. The government has not changed its theory in this case. To the contrary, it has been clear, methodical, and thorough in presenting a theory of false claims on clearly articulated theories of conspiracy to commit health care fraud, health care fraud, and the claims themselves throughout the course of its case-in-chief. Its closing argument will argue that the evidence has demonstrated exactly what was alleged in the indictment—that the defendants knowingly and willfully made false statements to health care benefit programs for a number of years in furtherance of a scheme to defraud, as outlined in the totality of the indictment, including paragraphs 24 and 31, which provides specific details and examples of the scheme.

## II. FACTS

Ganesh's concerns are limited to the seven counts of making false statements to a health care benefit program, in violation of 18 U.S.C. section 1035. Each of those alleged counts provides specificity in the indictment as to the nature of the alleged falsity. See ECF No. 52, pages 11-12. For the Court's convenience, the alleged falsity as to each count is summarized as follows:

| COUNT | NATURE OF ALLEGED FALSITY |
|---|---|
| 11 | Impermissible usage of TIN associated with another provider; alleged service not performed on 12/31/2012 for duration claimed |
| 12 | Impermissible usage of TIN associated with another provider; alleged service not performed on 6/2/2012 and for duration claimed |
| 13 | Services not provided on three successive days 12/29/2012, 12/30/2012, and 12/31/2012) for the duration claimed |
| 14 | Service not rendered on date indicated for duration claimed |
| 15 | Service not rendered on dates and for duration claimed |
| 16 | Service not rendered on dates and for duration claimed |
| 17 | Service not rendered on dates and for duration claimed |

The indictment expressly incorporated the prior paragraphs of the indictment in paragraphs Eleven through Seventeen as a part of its charging theory. In particular, the Section 1035 counts

2

incorporated into their charging theory paragraphs 24 and 31, which specified the myriad of techniques used by the defendants to execute the fraud and provided examples thereto:

> 24. It was part of the scheme that defendants GANESH and BELCHER submitted and caused to be submitted to HCBPs false claims for services that GANESH and BELCHER knew were not properly payable because (1) defendants GANESH and BELCHER included false and inaccurate CPT codes, which artificially inflated both the seriousness of the patient's condition as well as the time which the physician spent examining the patient; (2) defendants GANESH and BELCHER included false diagnoses in the claims which did not correspond with the true health and presentation of the patient beneficiaries; (3) defendants GANESH and BELCHER included claims for days when the patient beneficiaries had not been seen by the provider; (4) defendant GANESH represented that the patient beneficiaries were seen by another physician provider (not herself) no longer affiliated with defendant GANESH and her practice at CMG, and (5) defendant BELCHER represented that the patient beneficiaries received physical therapy from a physical therapist when in fact they received massages from massage therapists.
>
> 31. Also in furtherance of the scheme, defendants GANESH and BELCHER caused to be submitted hundreds of claims for reimbursement from the HCBPs for days which (i) were weekends when the CMG and physical therapy office located in Saratoga were closed; (ii) the patient denied they were seen; (iii) used CPT codes under both GANESH's own TIN and the KRD TIN which accounted for more than 24 hours in a single day; (iv) were days when the patient beneficiary could not have been seen by GANESH, BELCHER, or their staff because either the patient or defendants GANESH and BELCHER were not physically present in California, and (v) the patient did not receive the care described in the false claim. In particular:
>
>   a. Defendant GANESH submitted a total of 88 reimbursement requests to various HCBPs falsely claiming a total of 116 hours of patient care in a single day, June 28, 2012, including a request sent on June 13, 2013, to Anthem Blue Cross on a CMS-1500, falsely claiming that E.D. of KRD had provided services to patient beneficiary S.S. on June 28, 2012.
>
>   b. On or about June 12, 2013, defendant GANESH submitted a request for reimbursement to Blue Shield through their electronic management system falsely claiming patient beneficiary M.K. had been seen by E.D. on March 5, 2012, using CPT Code 99245, indicating that an 80-minute visit with the highest level of complexity had occurred.
>
>   c. Defendant GANESH submitted a total of 170 reimbursement requests to various HCBPs, using both the KRD TIN and her own TIN, falsely claiming a total of 114 hours of patient care in the CMG office on Saturday, December 29, 2012, including one claim submitted to Cigna on March 29, 2013, for care allegedly provided to patient beneficiary M.H.

d.  Defendant GANESH submitted a total of 164 reimbursement requests to various HCBPs, using both the KRD TIN and her own TIN, falsely claiming a total of 113 hours of patient care on Sunday, December 30, 2012, including one claim submitted to Cigna on March 29, 2013, for care allegedly provided to patient beneficiary M.H.

e.  Defendant GANESH submitted a total of 124 reimbursement requests to various HCBPs, using both the KRD TIN and her own TIN, falsely claiming a total of 85 hours of patient care on Monday, December 31, 2012, including one claim submitted to Cigna on March 29, 2013, for care allegedly provided to patient beneficiary M.H.

f.  From on or about May 7, 2014, to on or about May 20, 2014, defendant BELCHER submitted fifteen fraudulent reimbursement claims, for a total of $1,354, to Cigna for care allegedly provided to patient beneficiary M.H., when in truth and in fact, defendant BELCHER provided no care to the patient on the claimed dates.

g.  From on or about May 7, 2014, to on or about May 20, 2014, defendant GANESH submitted four fraudulent reimbursement claims, for a total of $800, to Cigna for care allegedly provided to patient beneficiary M.H., when in truth and in fact, defendant GANESH provided no care to the patient on the claimed dates.

h.  On or about May 12, 2014, Defendant GANESH submitted four fraudulent reimbursement claims, for a total of $800, to UnitedHealthcare for care allegedly provided to patient beneficiary A.D. under CPT Code 99215, on February 17, 19, 21, and 23, 2014, when in truth and fact, defendant GANESH provided no care to the patient on the claimed dates.

i.  Between on or about July 20, 2012 and on or about December 1, 2012, defendant GANESH submitted to Aetna over 73 claims all purportedly for the care of a single patient beneficiary, S.K., almost all of which were billed at CPT Code 99245, indicating visits of approximately 80 minutes in length. In truth and fact S.K. reported that she or her family members were seen by GANESH no more than nine times total in the four month period, and never for more than 15 minutes at a time. When S.K. contested the charges with Aetna in or about March 2013, Aetna sought additional documentation from GANESH and disallowed approximately $4000.00 of the billed charges. When Aetna failed to pay, defendant GANESH sent S.K. a bill in December 2014 purporting to claim that S.K. and family personally owed CMG $7,350.00 in unpaid and unreimbursed office visits.

j.  On or about May 27 and August 8, 2014, Defendant BELCHER caused to be submitted three fraudulent reimbursement claims, in the amounts of $131.68 and $133.67 (twice), to Blue Shield of California for physical therapy allegedly provided to patient beneficiary M.K., on May 19, May 22, and July 29 (respectively), when in truth and fact, the patient received either a massage or no care of any sort on the claimed dates.

k. On or about June 30, 2014, Defendant BELCHER caused to be submitted a fraudulent reimbursement claim, in the amount of $131.68, to Blue Shield of California for physical therapy allegedly provided to patient beneficiary A.B., on June 22, 2014, when in truth and fact, the patient received either a massage or no care of any sort on the claimed date.

l. On or about October 12, 2012, June 21, 2013, and November 26, 2013, Defendant BELCHER caused to be submitted three fraudulent reimbursement claims, in the amounts of $161.16 and $217.01 (twice) to Cigna for physical therapy allegedly provided to patient beneficiary M.H., on October 9, 2012, June 19, 2013, and November 23, 2013 (respectively), when in truth and fact, the patient received either a massage or no care of any sort on the claimed dates.

III. ARGUMENT

The defense has filed this motion under the guise of expressing concerns about a potential "constructive amendment," or possibly a variance issue being presented through a distinction between the theories alleged and the proof provided at trial. Though the defense has never raised any concern about this issue until the filing of the instant motion, the defense now seeks an order limiting the government's closing argument by requiring the government to focus on certain theories alleged in the indictment as to Counts Eleven through Seventeen. As outlined below, the defense arguments are both factually unsupported and legally baseless.

Constructive Amendment

A constructive amendment exists if "there is a complex of facts presented at trial distinctly different from those set forth in the [indictment]," or if "the crime charged in the indictment was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (citations and alterations omitted).

Ganesh's initial argument consists of an effort to torture the plain language of the indictment into a cramped and narrow reading which benefits Ganesh. For example, relative to Counts 12, 15, 16, and 17, the defendants claim that the language "not performed on [DATE] and for the duration claimed"

5

means that the government must elect between either a theory that the service never occurred, or was false only in the sense that the time of service reflected in the code was inaccurate.

This claim is meritless. As the Court pointed out, another obvious reading of this language is that a false claim submitted of, say, 80 minutes of service on a Sunday was false both in terms of claiming service occurred at all, and in claiming it was for 80 minutes. Similarly, to the extent that the claimed misidentified the doctor that provided the care, the government has proven that the service claimed to have provided was never in fact provided. The government's proof that the service never happened on this date proves both that the service was not performed and that it did not last 80 minutes; as the Court also noted, the concepts are not mutually exclusive, as the defense appears to argue. Furthermore, it is well-established law in the Ninth Circuit that the government may allege the conjunctive and prove the disjunctive; there was nothing wrong with the government alleging more than one meands of committing the crime, and presenting proof of one or both of them as a basis for a guilty verdict. When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those conjunctively charged acts may establish guilt. *United States v. Urrutia*, 897 F.2d 430, 432 (9th Cir.1990); *United States v. Bettencourt*, 614 F.2d 214, 219 (9th Cir.1980) ("[A] jury may convict on a finding of any of the elements of a disjunctively defined offense, despite the grand jury's choice of conjunctive language in the indictment."); see also *United States v. Miller*, 471 U.S. 130, 134–38, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (no fatal variance when jury convicts on proof of only one of several means of committing crime that were alleged in the indictment, so long as indictment gave clear notice of charges to be defended against).

The defendant's efforts to manufacture confusion from whole cloth continues in her discussion of Counts 11 and 14. The language for these counts alleges "not rendered on the [date] and for duration claimed." Similarly, proof that the defendant failed to provide any service at all on these dates meets the

6
GOVERNMENT'S RESPONSE TO DEFENSE
FILING RE: CONSTRUCTIVE AMENDMENT
CR 16-00211

plain language of this allegation by establishing that the purported service was neither rendered nor for the duration claimed in the false bill.  Additionally, to the extent that the claim misidentified the doctor that provided the care, the government has proven that the service claimed to have provided was never in fact provided.  The remaining Count cited by the defense, Count 13, contains an allegation of three successive days "for the duration claimed;" the government's proof has established that two of these three dates were weekends, thus proving the falsity of this claim.  The government's proof will establish that these claims were false as explicitly alleged in the indictment; there is simply no common-sense reading of the indictment which provides a basis for the defendant's purported concern of a constructive amendment.  To the extent the defense argument is focused on the precise dates alleged in the indictment, the Ninth Circuit has long held that the date of a crime is not an element of the offense.  In *United States v. Hinton*, 222 F.3d 664 (9th Cir.2000), for instance, the Ninth Circuit upheld an indictment which misstated the date of the offense by 18 days, and which misidentified the cities between which contraband was shipped in interstate commerce. In finding these errors to be insignificant, the Ninth Circuit held that "the test of the sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." Id. at 672 (citing *United States v. Rosi*, 27 F.3d 409, 415 (9th Cir.1994)); see also *United States v. Alviso*, 152 F.3d 1195, 1197 (9th Cir.1998) (recognizing that the Government need only prove that crime occurred "reasonably near" the date stated in the indictment); *see also United States v. Girod,* 646 F.3d 304, 316 (5th Cir. 2011) (applying same principles to 1347 and 1035 claims in a health care fraud case, holding that difference of 4 months between alleged date of false claim and proven date of false claim was sufficient).

The defense also appears to be arguing that the government will be constructively amending the indictment if it argues that the claims submitted were false in any manner other than that which was specified explicitly in the brief description of falsity associated with the count.  This claim is also legally

7
<s>GOVERNMENT'S RESPONSE TO DEFENSE
FILING RE: CONSTRUCTIVE AMENDMENT
CR 16-00211</s>

baseless. The Supreme Court has stated that there are "two constitutional requirements for an indictment: first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz–Ponce*, 549 U.S. 102, 108, 127 S.Ct. 782, 788, 166 L.Ed.2d 591 (2007) (internal alterations and quotation marks omitted). The issue in determining whether an indictment has been constructively amended is whether the deviation between the facts alleged in the indictment and the proof adduced at trial undercuts these constitutional requirements. If the indictment notifies the defendant of the "core of criminality," United States v. Patino, 962 F.2d 263, 265–66 (2d Cir. 1992), and the government's proof at trial does not "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury," *United States v. Clemente,* 22 F.3d 477, 482 (2d Cir.1994), then he has sufficient notice "of the charge against which he must defend," *Resendiz–Ponce, 549* U.S. at 108.

The indictment in this case plainly meets the standards outlined by the Supreme Court in *Resendiz-Ponce*. The defense is on clear notice of the theories of falsity the government intends to argue with respect to Counts 11 through 17. The government explicitly outlined in paragraphs 24 and 31 of the indictment the methodologies used by the defense in executing the scheme to defraud, and based on their express incorporation into Counts 11 through 17, the government is free to argue that the defendants used all of these methodologies in submitting false claims. There is no authority cited by the defense which would constrain the government from proving up any of the identified methods of fraud in paragraphs 24 and 31 as to each of the counts alleged in Counts Eleven through Seventeen, if the facts supported such an argument.

The government's conduct throughout the trial is consistent with this approach. As the Court noted, the government has presented a thorough (if not tedious) overview of the false aspects of each

8

GOVERNMENT'S RESPONSE TO DEFENSE
FILING RE: CONSTRUCTIVE AMENDMENT
CR 16-00211

claim through its presentation of the evidence in this case, a process which included a rather painstaking presentation of individual patients and the specific claims related to those patients which the government alleges to be false. This is not a case where there is any ambiguity or uncertainty as to what the government intends to argue at closing; it intends to argue that the claims on the dates specified for each identified defendant were false. Neither the evidence presented nor the Court's proposed jury instructions permit the jury to convict defendants based on an entirely different enterprise or purpose from that alleged in the indictment; indeed, the jury is clearly required in the Court's jury instructions to find a scheme to commit health care fraud, or deliberate false statements to health care benefit programs, in order to return a conviction.

This case is clearly distinguishable from prior cases finding constructive amendment issues. *Cf. Stirone v. United States*, 361 U.S. 212, 217-19 (1960) (finding constructive amendment where the defendant was indicted only for interfering with sand imports, but the proof and jury instructions related to steel shipments); *United States v. Dipentino*, 242 F.3d 1090, 1094 (9th Cir. 2001) (finding constructive amendment where indictment charged violation of one work practice standard but jury instruction permitted conviction for violating a different work practice standard not charged in indictment); *Howard v. Daggett*, 526 F.2d 1388, 1390 (9th Cir. 1975) (finding constructive amendment where indictment charged travel in interstate commerce for the purpose of inducing two specific women to engage in prostitution, but supplemental instruction allowed conviction based on evidence introduced at trial regarding women other than the two named in the indictment). The defendant's purported concerns about constructive amendments are nothing more than a tactical move to narrow and constrain the government's ability to marshal its proof during its closing argument. These arguments are legally baseless, and should be rejected as such by the Court.

<u>Material Variance</u>

Though the defense brief did not specifically raise the issue of a material variance, the

government includes the basic law regarding variances for the Court's use in considering this matter. A material variance exists if a materially different set of facts from those alleged in the indictment is presented at trial, and if that variance affects the defendant's "substantial rights." *Adamson*, 291 F.3d at 615–16.

In *Adamson*, the Ninth Circuit found that there was a variance between the indictment and the proof at trial because the "misrepresentation specified in the indictment and the misrepresentation shown at trial" differed. *Id*. at 615. The misrepresentation charged in the indictment was the fact that computer servers had been upgraded. The court's instructions, however, allowed the jury to find the defendant guilty based on a misrepresentation regarding how the servers were upgraded. *Id*. The Ninth Circuit concluded that there was a variance because there was "but one set of facts with a single divergence, namely, the content of the misrepresentation that the defendant made." *Id*. (alteration, internal quotation marks and citation omitted).

This case does not present the situation seen in *Adamson*. The government has been consistent in presenting facts consistent with the theories referenced in paragraph 24. The government has emphasized the inaccurate use of high-reimbursement use of CPT codes in claims submitted to insurance companies (or miscoding the claims). Additionally, the government has presented evidence that some diagnoses were false. The government has presented evidence that the defendants submitted claims for days when the patients were not seen by the defendants. The government has presented evidence that claims were submitted claiming that the patient was seen by Edward Dewees, and not by one of the defendants. And the government has presented evidence that defendant Belcher submitted claims that patients received physical therapy from a physical therapist when in fact the patient simply received a massage. The government is free to argue all of these theories in its closing argument as to all counts of alleged falsity. There is simply no legal support cited by the defendant for the proposition

10
GOVERNMENT'S RESPONSE TO DEFENSE
FILING RE: CONSTRUCTIVE AMENDMENT
CR 16-00211

that the government must be constrained by the specific examples included adjacent to each specifically alleged count in the indictment, and Ninth Circuit precedent to the contrary.

## CONCLUSION

The record does not provide any basis for the expressed concern about either a constructive amendment or a variance developing during the government's closing argument. The defendant's request for an order of the Court limiting its presentation of the evidence during its closing argument should accordingly be denied.

DATED: December 11, 2017           Respectfully Submitted,

BRIAN J. STRETCH
United States Attorney

*/s/*
JEFFREY D. NEDROW
PATRICK DELAHUNTY

GOVERNMENT'S RESPONSE TO DEFENSE
FILING RE: CONSTRUCTIVE AMENDMENT
CR 16-00211

11